**In re Gary Charles RUSTAD and Shirley Rustad, a/k/a, d/b/a Sawtooth Insurance Agency, Debtors.**

**ROCKY MOUNTAIN GENERAL AGENCY, Plaintiff,**

v.

**Gary Charles RUSTAD and Shirley Rustad, Defendants.**

**Bankruptcy No. 86–40705.
Adv. No. 487/0018.**

United States Bankruptcy Court,
D. Montana.

Sept. 28, 1987.

Scott Radford, Great Falls, Mont., for debtors/defendants.

Steven M. Johnson, Great Falls, Mont., for plaintiff.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

A hearing was held on June 18, 1987, concerning Rocky Mountain General Agency's Motion for Summary Judgment. Upon completion of the hearing, this Court took the case under advisement. Briefs are now on record in support of and in opposition to the Motion for Summary Judgment.

## FACTS

No genuine issues regarding material facts are addressed in either party's brief, and therefore this case is ripe for summary judgment. The threshold issue to be decided is whether or not insurance premium monies received by Debtors and owed to Rocky Mountain General Agency may be dischargeable under the Code.

Rocky Mountain General Agency (hereinafter Rocky Mt. General), contends that the debt is non-dischargeable under either 11 U.S.C. § 523(a)(4) or 11 U.S.C. § 523(a)(6).

Rocky Mt. General argues that the Debtors received insurance premiums as fiduciaries for Rocky Mt. General and then spent the money for their own personal use. Rocky Mt. General contends that un-

der Section 33–17–1102, M.C.A., agents, such as the Debtors, are obligated to hold such monies for remittance to the principal company under a trust arrangement. Section 33–17–1102 reads:

> "Reporting and accounting for premiums.
>
> (1) All premiums or return premiums received by an agent or solicitor must be held in a separate trust account. The licensee shall at all times act in a fiduciary capacity, and the agent or solicitor shall in the applicable regular course of business account for and pay the same to the insured, insurer, or agent entitled thereto. Except for a title agent as defined in 33–25–105, an agent may deposit and commingle in the same such separate deposit all such funds belonging to others so long as the amount of such deposit so held for each respective other person is reasonably ascertainable from the records and accounts of the licensee.
>
> (2) Any agent or solicitor not lawfully entitled thereto may not divert or appropriate such funds or any portion thereof to his own use."

Although the general rule under federal law is to narrowly construe non-dischargeability, state law, such as § 33–17–1102, may be consulted to determine if a true trust exists. *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986). The Debtors admit violating § 33–17–1102, and in fact have repaid $14,399.30 of the $18,000.00 which they wrongfully kept. Rocky Mt. General argues that the Debtors' admission makes the debt non-dischargeable under 11 U.S.C. § 523(a)(4) "for fraud or defalcation while acting in a fiduciary capacity ..." Further, Rocky Mt. General argues that the Debtors are not entitled to a discharge under 11 U.S.C. § 523(a)(6) "for willful and malicious injury by the Debtor ... to the property of another entity."

Debtors hold the position that, although they violated § 33–17–1102, they were justified in doing so and furthermore that Rocky Mt. General's acceptance of their repayment of $14,399.30 should act as a waiver of the remaining $5,600.70 of debt claimed here.

## DISCUSSION

■ In keeping with the purpose of the Bankruptcy Code, exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the Debtor. *In re Boyer*, 62 B.R. 648 (Bankr.Mont. 1986); *In re Linn*, 38 B.R. 762 (B.A.P. 9th Cir.1984); *In re Marino*, 29 B.R. 797 (D.C. N.D.Ind.1983). The exceptions to dischargeability must be narrowly construed against the creditor's objections, and confined to those plainly expressed in the Code. *In re Norman*, 25 B.R. 545 (Bankr. S.D.Cal.1982). This is done to effectuate the fresh start policies of the Code. *In re Cross*, 666 F.2d 873, 879–80 (5th Cir.1982); *In re Levitan*, 46 B.R. 380 (Bankr.E.D.N.Y. 1985); *In re Nicoll*, 42 B.R. 87 (Bankr.N.D. Ill.E.D.1984).

■ Although the non-dischargeability provision of the Bankruptcy Code has no provisions which allocate the burden of proof brought under it, the creditor must establish that the debt is non-dischargeable and has the burden of proof on the elements. *In re Hunter*, 780 F.2d 1577 (11th Cir.1986); *In re Black*, 787 F.2d 503 (10th Cir.1986), and *In re Kreps*, 700 F.2d 372, 376 (7th Cir.1983). The Ninth Circuit has set out the elements which must be met for non-dischargeability under 11 U.S.C. § 523(a)(4), the elements being:

> "(1) The debtor made the representations;
>
> (2) *That at the time he knew they were false;*
>
> (3) That he made them with the intention and purpose of deceiving the creditor;
>
> (4) That the creditor relied on such representations;
>
> (5) That the creditor sustained the alleged loss and damages the proximate result of the representations having been made."

*In re Houtman*, 568 F.2d 651, 655 (9th Cir.1978). (Emphasis in original). Furthermore, the creditor objecting to dis-

charge of a debt bears a heavy burden of proof to establish that the debt is squarely within the statutory exceptions. *In re Boyer,* supra; *In re Marino,* 29 B.R. 797, 799, supra.

■■ Creditor Rocky Mt. General argues that the Debtor should be held out as person in a fiduciary capacity. The meaning of "fiduciary" in 11 U.S.C. § 523(a)(4) is an issue of federal law. *In re Pedrazzini,* 644 F.2d 756 (9th Cir.1981); *In re Teichman,* 774 F.2d 1395 (9th Cir.1985). The broad, general definition of a fiduciary is inapplicable in the dischargeability context. *In re Angelle,* 610 F.2d 1335 (5th Cir.1980). For a trust to be applicable, in a fiduciary relationship, it must be imposed prior to any wrongdoing. The Debtor must have been a trustee in the relationship before the wrong and without reference to it. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Pedrazzini,* 644 F.2d at 758; and *Teichman,* 774 F.2d at 1399. These requirements eliminate all implied, constructive, or resulting trusts. *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986). As stated in *Pedrazzini,* 644 F.2d at 759:

> "With one exception, all of the courts that have dealt with statutes imposing criminal or other penalties for this kind of diversion of funds have refused to find a trust relationship. The rationale is that even if a trust is created by such a statute, the trust arises only upon the act of misappropriation and cannot be said to exist prior to the wrong and without reference to it. *In re Angelle,* 610 F.2d at 1340; *In re Thornton,* 544 F.2d [1005] at 1007 [ (9th Cir.1976]. See also *Devaney v. Dloogoff (In re Dloogoff),* 600 F.2d 166 (8th Cir.1979). The exception is *Allen v. Romero (In re Romero),* 535 F.2d 618 (10th Cir.1976), where the Tenth Circuit construed a New Mexico statute providing for revocation of a contractor's license if funds advanced by the owners for completion of the contract were used for other purposes. The court reasoned that because the contractor had to obtain a license prior to any dealing between the contracting parties, the

trust was created prior to the claim of misappropriation. 535 F.2d at 622.

> We agree with the Fifth Circuit's criticism of *In re Romero.* See *In re Angelle,* 610 F.2d at 1340. The statutes relied on in *Romero,* like the California statutes relied on by appellant here, operate only after an act of wrongdoing has occurred. The California statutes do not create the basic elements of a trust. No res is defined and no fiduciary duties are spelled out. Therefore, the statutes do not create a true fiduciary relationship between the parties."

Although the concept of fiduciary is a matter of federal law, state law may be consulted to determine if a true trust exists. *Ragsdale,* 780 F.2d at 794. Under Montana law a trustee is a "... person who *voluntarily* assumes a relationship of personal confidence with another ..." § 72–20–105, M.C.A. (Emphasis added). In the case at hand, the Debtor became a trustee by operation of § 33–17–1102, and as such is involved in an involuntary trust. § 72–20–103, M.C.A. Since the Debtor became a trustee by operation of law, a constructive trust and not a true trust was established. Under the Ninth Circuit's ruling in *Ragsdale,* a trustee's debt under a constructive trust should not be held as non-dischargeable. *Ragsdale,* 780 F.2d at 796. As such 11 U.S.C. § 523(a)(4) provides no basis for relief to the plaintiff.

■ In this case, the Debtors also repaid approximately two-thirds of the $18,000.00 which they owed. Rocky Mt. General received this money and deposited the checks into their own account. The Debtors willingness to repay Rocky Mt. General would make 11 U.S.C. § 523(a)(6) inapplicable as there is no evidence that Debtors did "willfully or maliciously" injure this creditor.

The Debtors here have broken a promise which would constitute a breach of contract, but not a false representation or a malicious taking. They attempted to, and were repaying the amount agreed upon when financial difficulties forced them to file for bankruptcy. If no fraudulent intent was present at the time the Debtors agreed to repay Rocky Mt. General, then

this Court cannot find fraudulent intent simply because the full amount was not paid. See *In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981).

### DECISION

IT IS ORDERED that Rocky Mountain General Agency's Motion For Summary Judgment is denied, and a decision for Summary Judgment in favor of discharge of the debt owed is entered.